TRI–COUNTY LANDFILL, INC., APPELLANT, V. BOARD OF COUNTY COMMISSIONERS OF SIOUX COUNTY, NEBRASKA, APPELLEE.

526 N.W.2d 668

Filed February 3, 1995. No. S–93–1010.

Howard P. Olsen, Jr., and Robert G. Simmons, Jr., of Simmons, Olsen, Ediger & Selzer, P.C., for appellant.

John H. Skavdahl, Sioux County Attorney, for appellee.

HASTINGS, C.J., WHITE, CAPORALE, LANPHIER, and WRIGHT, JJ.

WRIGHT, J.

In accordance with Neb. Rev. Stat. § 13-1702 (Reissue 1991), Tri-County Landfill, Inc. (Tri-County), filed an application with the Board of County Commissioners of Sioux County, Nebraska (Board), requesting siting approval for a solid waste landfill site. The Board denied the request, and Tri-County filed a petition for hearing with the district court for Sioux County. The district court rendered a decision in favor of the Board, and Tri-County appeals. We granted Tri-County's petition to bypass the Nebraska Court of Appeals.

## SCOPE OF REVIEW

When the Administrative Procedure Act is inapplicable because another method of appeal has been prescribed and the standard of review has not otherwise been specified, the standard of review will be to search only for errors appearing in the record; i.e., whether the decision conforms to law, is supported by competent and relevant evidence, and was not arbitrary, capricious, or unreasonable. See, *Northern Natural Gas Co. v. State Bd. of Equal.*, 232 Neb. 806, 443 N.W.2d 249 (1989), *cert. denied* 493 U.S. 1078, 110 S. Ct. 1130, 107 L. Ed. 2d 1036 (1990), *overruled on other grounds*, *MAPCO Ammonia Pipeline v. State Bd. of Equal.*, 238 Neb. 565, 471 N.W.2d 734 (1991), *cert. denied* ___ U.S. ___, 113 S. Ct. 2930, 124 L. Ed. 2d 681 (1993); *In re Application A-15738*, 226 Neb. 146, 410 N.W.2d 101 (1987).

The siting approval procedures, criteria, and appeal procedures provided for in Neb. Rev. Stat. §§ 13-1701 to 13-1714 (Reissue 1991 & Cum. Supp. 1994) shall be the exclusive siting procedures and appeal procedures. Local zoning ordinances, other local land-use requirements, and other ordinances or resolutions shall be considered in such siting decisions. § 13-1709.

A judgment rendered or final order made by the district court may be reversed, vacated, or modified for errors appearing on

the record. Neb. Rev. Stat. § 25-1911 (Cum. Supp. 1994).

An appellate court acquires no jurisdiction unless the appellant has satisfied the requirements for appellate jurisdiction. *Manske v. Manske*, 246 Neb. 314, 518 N.W.2d 144 (1994). In order to vest an appellate court with jurisdiction, the notice of appeal must be filed within 30 days of the entry of the final order or the overruling of a motion for new trial. *Mason v. Cannon*, 246 Neb. 14, 516 N.W.2d 250 (1994).

## FACTS

Tri-County sought approval for a solid waste landfill site in the west half of Section 32, Township 24 North, Range 55 West of the 6th P.M., in Sioux County, Nebraska. This site is one-half mile north of the Scotts Bluff County-Sioux County line and is approximately 8½ miles north and 3 miles west of the city of Scottsbluff. At a hearing held on December 8, 1992, the Board received evidence presented by Tri-County and heard testimony from opponents to the site. Additional evidence was accepted by the Board in the 30-day period following the hearing. On February 12, 1993, the Board voted unanimously to deny the application, for failure to meet all the criteria set forth in § 13-1703.

Thereafter, Tri-County filed a petition in the district court, asserting that the Board's denial of the application was not based on the law or the evidence presented and that the Board did not have the authority to deny the application. After a hearing, the court wrote to counsel for both parties on September 22, 1993, setting forth its findings. At the court's request, counsel for the Board prepared a document entitled "Findings, Conclusions and Final Order," which was filed with the court on October 5. The court found that the Board's decision that Tri-County had failed to submit information demonstrating compliance with § 13-1703(1) was not arbitrary, capricious, or unreasonable and that the denial of the application by the Board should be affirmed.

## ASSIGNMENTS OF ERROR

Tri-County assigns as error that the district court erred in (1) using a scope of review which applies to administrative agencies, rather than conducting a de novo review; (2) failing to

make its own determination as to whether the statutory criteria were proven; (3) finding that Tri–County failed to submit information to demonstrate compliance with the criteria stated in § 13–1703(1), (3), and (4); and (4) applying criteria that were not specified in § 13–1703.

## ANALYSIS

We first address a jurisdictional question raised by the Board in its appellate brief. The Board asserts that this court does not have jurisdiction because the notice of appeal filed on November 2, 1993, was not timely. An appellate court acquires no jurisdiction unless the appellant has satisfied the requirements for appellate jurisdiction. *Manske v. Manske, supra.* In order to vest an appellate court with jurisdiction, the notice of appeal must be filed within 30 days of the entry of the final order or the overruling of a motion for new trial. *Mason v. Cannon, supra.*

Following a July 21, 1993, hearing, the matter was taken under advisement. On September 22, the court made a docket entry which stated: "Decision made. Co. board affirmed & fee of Snyder approved." On the same day, the court wrote a letter to counsel for both parties informing them of the court's findings and directing the Board's attorney to prepare the journal and order. The record does not show that an oral pronouncement of the judgment was made in open court. A docket entry dated October 5 reads: "Findings, Conclusions and Final Order." A document entitled "Findings, Conclusions, and Final Order," which contains the court's judgment, was filed with the clerk of the district court on October 5.

A notice of appeal must be filed "within thirty days after the rendition of such judgment or decree or the making of such final order." Neb. Rev. Stat. § 25–1912(1) (Cum. Supp. 1994). To answer the question regarding jurisdiction, we must determine the starting point for that 30–day period. In *In re Interest of J.A.,* 244 Neb. 919, 921–22, 510 N.W.2d 68, 71 (1994), we held:

> With respect to final orders, this court has never explicitly stated when the time for filing an appeal begins to run. Nevertheless, we believe that the answer is implicit

within our statutes and case law: When an appeal is taken from a final order, the time for appeal begins to run when the order is entered on the journal of the court.

"All judgments and orders must be entered on the journal of the court, and specify clearly the relief granted or order made in the action." Neb. Rev. Stat. § 25-1318 (Reissue 1989). Orders which are not announced in open court are not formalized until they have been entered on the journal. Cf. *In re Estate of Seidler*, 241 Neb. 402, 490 N.W.2d 453 (1992). The journal of the trial court is the official record of the judgments and orders of that court. Accord *Midwest Laundry Equipment Corp. v. Berg*, 174 Neb. 747, 119 N.W.2d 509 (1963). A notice of appeal, therefore, must be filed within 30 days of the date the order was entered on the journal of the trial court.

We note that this rule is in harmony with the rules concerning rendition of judgment. Rendition of judgment occurs when the court makes an oral pronouncement and accompanies that pronouncement with a notation on the trial docket. Neb. Rev. Stat. § 25-1301 (Reissue 1989). Failing a notation on the trial docket, a judgment is rendered when some written notation of the judgment is filed in the records of the court. *Federal Land Bank v. McElhose*, 222 Neb. 448, 384 N.W.2d 295 (1986); *Schmuecker Bros. Implement v. Sobotka*, 217 Neb. 114, 348 N.W.2d 130 (1984).

Thus, there are two occurrences which may begin the 30-day period in which a notice of appeal must be filed: (1) the rendition of the judgment, which occurs when an oral pronouncement of the judgment is made in open court and a notation of the judgment is made on the trial docket, or (2) the entry of a judgment, which is the act of the clerk of the court in spreading on the court's journal both the proceedings had and the relief granted or denied.

The Board argues that the district court's letter to counsel qualifies as a rendition of judgment under Neb. Rev. Stat. § 25-1301 (Reissue 1989). We disagree. The letter of September 22, 1993, was not the equivalent of an oral pronouncement of the judgment in open court, and the record does not establish

that the court orally pronounced the judgment in open court. See *In re Interest of J.A., supra*. The final order was not entered until October 5, when the written notation was entered on the docket of the trial court. Since the notice of appeal was filed November 2, we find that the appeal was timely filed. Therefore, this court has jurisdiction to consider the merits of the action.

We next consider the assignments of error raised by Tri–County. Tri–County argues that the district court erred in using a scope of review which applies to administrative agencies and in failing to consider the matter de novo on the record before the Board. We disagree. We have held that when the Administrative Procedure Act is inapplicable because another method of appeal has been prescribed and the standard of review has not otherwise been specified, the standard of review will be to search only for errors appearing in the record. See, *Northern Natural Gas Co. v. State Bd. of Equal.*, 232 Neb. 806, 443 N.W.2d 249 (1989), *cert. denied* 493 U.S. 1078, 110 S. Ct. 1130, 107 L. Ed. 2d 1036 (1990), *overruled on other grounds, MAPCO Ammonia Pipeline v. State Bd. of Equal.*, 238 Neb. 565, 471 N.W.2d 734 (1991), *cert. denied* ____ U.S. ____, 113 S. Ct. 2930, 124 L. Ed. 2d 681 (1993); *In re Application A–15738*, 226 Neb. 146, 410 N.W.2d 101 (1987).

The Legislature has provided a method of appeal other than the Administrative Procedure Act in cases related to solid waste disposal. Section 13–1709 provides that the siting approval procedures, criteria, and appeal procedures provided for in §§ 13–1701 to 13–1714 shall be the exclusive siting procedures and appeal procedures. Section 13–1712 provides:

> If the . . . county board of commissioners . . . does not approve a request for siting approval pursuant to sections 13–1701 to 13–1714 and 76–2,119, the applicant . . . may petition for a hearing before the district court of the county . . . to contest the decision. . . . At the hearing, the burden of proof shall be on the petitioner. In making its orders and determinations under this section, the district court shall consider the written decision and reasons for the decision of the . . . county board and the transcribed record of the hearing held pursuant to section 13–1706.

Since another method of appeal is prescribed, the district court was required to search only for errors appearing in the record and to determine whether the decision conforms to law, is supported by competent and relevant evidence, and was not arbitrary, capricious, or unreasonable.

The district court stated that it examined the written decision of the Board, the reasons for that decision, and the applicable statutory law. The court also considered the evidence before the Board, including the exhibits submitted at the hearing and the written comments filed with the Board. The district court applied the correct standard of review in this case. This assignment of error has no merit.

Tri-County also argues that the district court erred in finding that Tri-County failed to submit information to demonstrate compliance with the criteria set forth in § 13-1703(1), (3), and (4). Section 13-1703 states that siting approval shall be granted only if the proposed area meets all of the criteria set forth therein. The criteria at issue in this case are as follows:

(1) The solid waste disposal area . . . is necessary to accommodate the solid waste management needs of the area which the solid waste disposal area . . . is intended to serve;

. . . .

(3) The solid waste disposal area . . . is located so as to minimize incompatibility with the character of the surrounding area and to minimize the effect on the value of the surrounding property. The . . . county board shall consider the advice of the appropriate planning commission regarding the application;

(4) The plan of operations for the solid waste disposal area . . . is designed to minimize the danger to the surrounding area from fire, spills, or other operational accidents.

§ 13-1703.

Tri-County's application stated that the city of Scottsbluff's landfill, which served all of Scotts Bluff County and portions of surrounding counties except the city of Gering and the village of Morrill, planned to cease operations in October 1993 and that no alternative disposal site had been approved or was likely

to be built to serve residents of southern Sioux County, Scotts Bluff County, and the surrounding counties. Tri–County claimed that a proposed Scotts Bluff County landfill might not allow disposal of waste from outside the county.

At the public hearing before the Board on December 8, 1992, Tri–County offered testimony from the owner of a sanitation service which serviced the rural parts of Scottsbluff, the southern part of Sioux County, and the village of Henry. The owner testified that waste collected by his service was taken to the Scottsbluff landfill, but would have to be taken to another site in the future because the Scottsbluff site would be closed in 1993. Another witness, who services the communities of Broadwater, Bridgeport, Bayard, Minatare, Melbeta, and McGrew, stated that the waste from Minatare, Melbeta, and McGrew had been taken to the Scottsbluff landfill and that no site for the southern Panhandle had been proposed.

Tri–County's president stated that he intended to provide service in southern Sioux County, Scotts Bluff County, western Morrill County, and Banner County and that it was not feasible for the Scottsbluff landfill to remain open beyond October 1993 because of new regulations. He did not indicate the amount of solid waste that would be generated on a daily basis in the proposed service area. An engineer who had studied solid waste management issues testified that the proposed site would probably accommodate a population of 30,000 over a 20- to 30–year period. Other testimony established that about 7,000 tons of waste would be deposited at the proposed site per year.

At a special meeting held on February 12, 1993, for the purpose of voting on the site application, the Board concluded that the evidence presented by Tri–County and by others on its behalf did not demonstrate compliance with the requirements set forth in § 13–1703. The Board noted that Sioux County had "entered into an agreement with other counties to accommodate solid wastes from all of Sioux County with other counties."

Section 13–1703 provides that siting approval shall be granted only if the proposed area meets all of the criteria set forth therein. Upon our review of the record for error, we find that there was sufficient competent evidence to support the district court's determination that Tri–County failed to establish that the

solid waste landfill site was necessary to accommodate the solid waste management needs of the area. The fact that the Board had entered into an agreement with other counties to accommodate solid waste from all of Sioux County is sufficient evidence to support the district court's determination. Since the first criterion of § 13–1703 has not been met, we need not consider whether the remaining criteria were satisfied, and we need not consider Tri–County's other assignments of error.

## CONCLUSION

The district court's decision conforms to the law, is supported by competent evidence, and is not arbitrary, capricious, or unreasonable. The judgment of the district court affirming the determination of the Board is affirmed.

AFFIRMED.